UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CAMERON DANIEL BURROWS,

        Petitioner,                    Case No. 1:19-cv-801

v.                                           Honorable Janet T. Neff

MATT MACAULEY,

        Respondent.
_____/

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I.      **Factual allegations**

Petitioner Cameron Daniel Burrows is incarcerated with the Michigan Department of Corrections at the Bellamy Creek Correctional Facility (IBC) in Ionia County, Michigan. Petitioner pleaded *nolo contendere* in the Ottawa County Circuit Court to reckless driving causing death, in violation of Mich. Comp. Laws § 257.626(4), and to reckless driving causing serious impairment of a body function, in violation of Mich. Comp. Laws § 257.626(3). On December 18, 2017, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to concurrent prison terms of 9 to 40 years.

Petitioner attaches to his supporting brief the sentencing transcripts from the Ottawa County Circuit Court. Those transcripts reveal that Petitioner, on January 3, 2017, ran a red light at a high rate of speed and collided with another vehicle, killing one person and seriously injuring another. (Sentencing Tr. II, ECF No. 2-1, PageID.70-72.) At Petitioner's initial sentencing hearing, the judge reported that he had received information about an incident involving Petitioner many years prior—a snowmobile accident—that resulted in the death of a young girl. (Sentencing Tr. I, ECF No. 2-1, PageID.54-56.) Because the judge anticipated the incident might be significant for sentencing, he adjourned the hearing to permit the prosecutor and defense counsel to explore the matter further. (*Id.*)

The court unquestionably considered the snowmobile accident when it imposed sentence on December 18, 2017. The court described the accident as follows: "[Y]ou were on a snowmobile at age 16, probably going a little bit immoderate, and then the victim was on an inner tube or fell off an inner tube or something and then you ran into her . . . ." (Sentencing Tr. II, ECF No. 2-1, PageID.69.) Petitioner acknowledged he was going approximately 40 miles per hour and

2

came over a knoll where the victim was in the snow. (*Id*., PageID.70.) He did not know she was there. (*Id*.) He hit her.

The court used that accident as a starting point in describing the "unwise things" Petitioner had done. (*Id*., PageID.72.) In recounting Petitioner's history, the court described the snowmobile accident as "operating a vehicle negligently." (*Id*., PageID.74.)

Petitioner's minimum sentence guideline range was 50 to 200 months. Determination of the range was based on application of the Michigan sentencing guidelines. Based on the transcripts, the 1992 accident did not contribute to any of the guidelines scoring that determined the range. Nonetheless, when the court selected a minimum sentence of 108 months from within that range, it was apparent he considered the snowmobile incident.

Petitioner, with the assistance of counsel, filed an application for leave to appeal his sentence in the Michigan Court of Appeals. (Pet'r's Appl. for Leave to Appeal, ECF No. 2-1, PageID.81-92.) Petitioner argued that the court was wrong to consider the incident from 25 years ago as evidence of negligence or some future danger, particularly where there were no criminal proceedings brought. Petitioner claimed that the court, in relying on that incident, relied on inaccurate information and that the resulting sentence was invalid. By order entered July 18, 2018, the court of appeals denied leave "for lack of merit in the grounds presented." (Mich. Ct. App. Order, ECF No. 2-1, PageID.94.)

Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court. That court denied leave by order entered December 4, 2018. (Mich. Order, ECF No. 2-1, PageID.96.)

On September 27, 2019, Petitioner timely filed his habeas corpus petition raising, essentially, the same ground for relief in raised in the Michigan appellate courts: "The trial court's

3

decision to impose a harsher sentence after considering materially untrue and inaccurate information violated the Petitioner's due process rights guaranteed by the Fourteenth Amendment, was contrary to clearly established federal law and was based on an unreasonable determination in light of the evidence presented to the courts, meeting both requirements for habeas relief under the AEDPA." (Pet'r's Br., ECF No. 2, PageID.21.)

## II. AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly

4

established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial

court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Discussion

A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980), *quoted in Koras v. Robinson*, 123 F. App'x 207, 213 (6th Cir. 2005); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Koras*, 123 F. App'x at 213 (quoting *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988)). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

There can be no question that the sentencing court relied on the information regarding Petitioner's snowmobiling accident when the court sentenced Petitioner for reckless driving. The court specifically mentioned the incident when it exercised its discretion to select a minimum sentence from within the range specified by the Michigan sentencing guidelines.

Petitioner's claim fails, however, because he has not shown that the information upon which the court relied was materially false. Petitioner did not dispute any of the facts the sentencing court used to describe the accident. Indeed, Petitioner's own description of the event provided the foundation for the court's consideration.

Petitioner takes issue, not with the factual description of the event, but with the sentencing court's conclusion that Petitioner was negligent. The court's finding that Petitioner

6

was negligent is the fact which he now contends was false. Petitioner claims that because no civil or criminal responsibility was imposed in 1992, when the incident occurred, the court was wrong to describe Petitioner's actions as negligent. Petitioner offers no authority for the proposition that failure to hold him civilly or criminally responsibility for the 1992 accident victim's death precludes a determination that he acted negligently when he hit her.

The sentencing judge's choice of a minimum sentence from within the guidelines range is an exercise of judicial discretion.[1] Judges are free to make factual findings based on a preponderance of the evidence when making discretionary decisions at sentencing. *See United States v. Booker*, 543 U.S. 220, 232 (2005) ("If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range."); *see also Apprendi v. New Jersey,* 530 U.S. 466, 481-82 (2000) (reiterating that "'a sentence imposed by a federal district judge, *if within statutory limits,* is generally not subject to review'") (emphasis added) (quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972)).

Whether or not the evidence preponderated or was "sufficient" to demonstrate Petitioner's negligence is not a constitutional issue. The Sixth Circuit described the scope of constitutional protection at sentencing as follows:

> But the Due Process Clause does not offer convicted defendants at sentencing the same "constitutional protections afforded defendants at a criminal trial." *United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir.1992) (en banc). "[B]oth before and since the American colonies became a nation," *Williams v. New York* explains, "courts in this country and in England practiced a policy under which a sentencing

---

[1] Since the Michigan Supreme Court issued its opinion in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), which made the guidelines advisory rather than mandatory, determination of the minimum sentence whether inside or outside of the guidelines range is an exercise of judicial discretion.

7

> judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." 337 U.S. 241, 246 (1949). That tradition has become more settled over time, because "possession of the fullest information possible concerning the defendant's life and characteristics" is "[h]ighly relevant—if not essential—to [the judge's] selection of an appropriate sentence." *Id*. at 247. An imperative of "evidentiary inclusiveness"—"a frame of reference as likely to facilitate leniency as to impede it," *United States v. Graham–Wright*, 715 F.3d 598, 601 (6th Cir.2013)—explains why the Evidence Rules, the Confrontation Clause, and the beyond-a-reasonable-doubt standard of proof do not apply at sentencing. *See United States v. O'Brien*, 560 U.S. 218, 224 (2010) (beyond a reasonable doubt); *Williams v. New York*, 337 U.S. at 246–47, 252 (Evidence Rules); *United States v. Katzopoulos*, 437 F.3d 569, 576 (6th Cir.2006) (Confrontation Clause); *see generally United States v. Tucker*, 404 U.S. 443, 446 (1972).

*United States v. Alsante*, 812 F.3d 544, 547 (6th Cir. 2016). The court concluded that the Due Process Clause "demands only that the sentencing hearing be 'fundamentally fair' and that the sentence turn on 'reliable information.'" *Id.* at 548 (quoting *United States v. Gatewood*, 230 F.3d 186, 191 (6th Cir. 2000) (en banc)).

Petitioner's sentencing transcripts show that the information upon which the sentencing court relied was reliable and that Petitioner was afforded every opportunity to present his position to the court. Based on that reliable information, the court concluded that Petitioner had acted negligently. The court is permitted to make such determinations as part of determining Petitioner's sentence. Thus, Petitioner has failed to show that the state court's determination of his claim is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief.

### IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Conclusion**

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:  December 30, 2019                           /s/ Janet T. Neff
                                                                        Janet T. Neff
                                                                        United States District Judge